TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-10-00275-CV






Jorge Monroy , Appellant


v.


Perla X. Monroy, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT

NO. D-1-FM-09-004901, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING




M E M O R A N D U M O P I N I O N



 Jorge Monroy appeals the district court's judgment in this divorce and suit affecting
the parent-child relationship. He contends that the court's division of the marital estate was not
just and right and that the court erred by ordering him to pay child support, both prospective and
retroactive, while he was incarcerated and not receiving income. We will affirm the judgment.


BACKGROUND


 At the trial, only Perla X. Monroy and her attorney testified. Jorge (1) represented
himself and did not testify, call or cross-examine witnesses, or present argument. The following
summary is drawn from the limited facts in Perla's testimony. She and Jorge were married in
September 1999. Jorge built fences and earned an estimated $3,000 per month when they were
together. She gave birth to a child in both 2002 and 2007, and the younger child had surgery at
six months of age that cost $8,000. The couple separated on or about April 1, 2008. During
the separation, Jorge followed Perla around and showed up unannounced. On one occasion, he took
the memory card from her camera and got into a shoving match with her while she held their
younger daughter. In early September 2009, the Monroys sold some real estate, with each spouse
getting $37,000.

 Jorge's behavior led Perla to seek protection from the courts. She filed a petition for
divorce on September 11, 2009, accompanied by an affidavit detailing a series of incidents with
Jorge that occurred in August 2009. The trial court granted a temporary restraining order designed
to keep Jorge from coming within 200 yards of her house. 

 Perla testified that on the evening of September 11, 2009, Jorge broke into her
house and attacked her and her boyfriend with a hammer. He hit the boyfriend in the face, took some
pictures, then hit her on the back of the head during the ensuing struggle. Her head wound required
seven staples, and she missed a week of school and work.

 Perla obtained a temporary ex parte protective order based on Jorge's commission
of family violence. Jorge was later arrested and jailed. He asserts that he has posted approximately
$570,000 in various bonds. The temporary protective order was extended on October 15, 2009. The
divorce was granted on November 5, 2009. The court signed a protective order on January 27, 2010,
and signed the divorce decree, specifying that the marriage was dissolved on the ground of cruelty,
on January 28, 2010. The court awarded $7,500 in attorney's fees payable by Jorge directly to
Perla's attorney.

DISCUSSION


 On appeal, Jorge contends that the trial court erred in two ways. He contends that the
division of the marital estate was not just and right. He also contends that the trial court erred in
ordering him to pay $618 in monthly child support and $10,506 in retroactive child support because
he was in jail and not earning income. He argues that the award of attorney's fees was not supported
by the pleadings or evidence.


The division of property

 We review a division of the marital estate for an abuse of discretion. Murff v. Murff,
615 S.W.2d 696, 698 (Tex. 1981). A trial court is charged with dividing the estate of the parties in
a just and right manner, considering the rights of both parties. Tex. Fam. Code Ann. § 7.001
(Tex. 2006). The court need not divide community property equally. Murff, 615 S.W.2d at 699. 
The trial court may consider many factors, including the parties' earning capacities, education,
business opportunities, physical condition, financial condition, age, size of separate estates, nature
of the property, and the benefits that the spouse who did not cause the breakup of the marriage would
have enjoyed had the marriage continued. Id.

 In granting the divorce, the court for the most part solemnized the division of property
the Monroys had effectuated during their separation. The court awarded each party the furniture,
furnishings, personal items, and sums of cash in his or her possession or subject to his or her
respective control. The court also awarded each party his or her individual retirement savings, as
well as the debts he or she incurred individually after the date of separation. In addition, the court
ordered Jorge to reimburse Perla $4,000 for his share of their daughter's medical expenses. The
court also awarded Perla the automobile in her possession purchased with the proceeds from an
insurance payout from a collision that damaged a 2000 Toyota Tundra. The court further awarded
Perla a 2007 Chevrolet Silverado pickup then in the possession of Jorge or his family, as well as the
remaining debt on that vehicle.

 Jorge complains about procedures used in the trial court. He complains that the trial
happened in an accelerated fashion while he was in jail and that no discovery occurred. He asserts
that Perla requested a just and right division, not a disproportionate one. He contends that she did
not seek attorney's fees nor request an award specifically in favor of her attorney. These contentions
do not require that we alter the judgment. The trial was accelerated because Jorge's attack on Perla
permitted the case to proceed without the typical 60-day waiting period. See Tex. Fam. Code Ann.
§ 6.702 (West Supp. 2010). The absence of discovery is not, without more, reversible error.
Discovery is permitted, but not required by the rules. Jorge does not allege, much less prove, that
the trial court improperly denied any proper discovery request or, for that matter, that he made a
discovery request. The division of property is not reversible simply because it may be unequal. See
Murff, 615 S.W.2d at 698-99. Finally, although Perla did not specifically plead for attorney's fees
in her petition for divorce, she did in her application for protective order. In the application, she
specifically requested that a judgment for attorney's fees be rendered in favor of her attorney.

 Jorge complains specifically about three items in the property division: (1) the award
to Perla of the Silverado pickup, especially without evidence of its value or the amount of the
remaining debt; (2) the award to her of an unspecified vehicle based on an insurance payout related
to a damaged vehicle not mentioned at trial; and (3) the order that Jorge reimburse Perla for $4,000
of their child's medical bill, the existence of which was not supported by documentation. For each
item, to varying degrees, Jorge complains that there is no evidence of value. 

 The lack of evidence of value of property in the trial court record does not require
reversal in a contested case. Each party in a divorce proceeding has a burden to present sufficient
evidence of the value of the community estate to enable the trial court to make a just and right
division. Id. at 509; Finch v. Finch, 825 S.W.2d 218, 221 (Tex. App.--Houston [1st Dist.] 1992,
no writ). An appellant who does not provide property values to the trial court cannot complain
on appeal of the trial court's lack of complete information. Todd v. Todd, 173 S.W.3d 126, 129
(Tex. App.--Fort Worth 2005, pet. denied); Tschirhart v. Tschirhart, 876 S.W.2d 507, 509
(Tex. App.--Austin 1994, no pet.). A party complaining of a property division "must be able to
show from the evidence in the record that the division is so unjust and unfair as to constitute an
abuse of discretion." Finch, 825 S.W.2d at 221; see also Magill v. Magill, 816 S.W.2d 530, 534
(Tex. App.--Houston [1st Dist.] 1991, writ denied) ("Without recorded property values and factual
findings, we presume that the trial court properly considered the entire circumstances of the parties
and correctly exercised its discretion in dividing their property.").

 First we note that, contrary to Jorge's assertion that he "got nothing in terms of
property," the trial court awarded him all household furniture, furnishings, fixtures, goods,
art objects, collectibles, appliances, equipment, clothing, jewelry, personal effects, and cash in his
possession or subject to his sole control, as well as monetary deposits in his name and retirement
benefits accrued due to his employment. We do not know the value of these assets, nor do we know
the value of similar awards to Perla, because neither party offered evidence of their value. This is
a barrier to Jorge's quest to prove that the division of property was unequal, much less whether it
was unjust and wrong.

 The only community assets specifically named were awarded to Perla--the
2007 Chevrolet Silverado and the vehicle bought with proceeds from the insurance payout from
a collision that damaged her 2000 Toyota Tundra. Other than Perla's testimony that the
monthly payments on the loan for the 2007 Chevy truck were $982, there is no evidence about the
value of either vehicle. Although Jorge complained in his motion for new trial about the award of
the Chevy to Perla for which she had "not paid a penny," he did not present any evidence regarding
any equity he had accrued by paying on the note. There was no mention at trial of the existence of
the 2000 Toyota Tundra, an insurance payout for a collision involving it, or a replacement vehicle.
These appeared for the first time in the divorce decree. The disposition of the Toyota in the decree,
however, distinguishes this case from those in which a party withholds information about an asset
and keeps it without it being distributed in the decree. Jorge's mention of the Toyota in his
motion for new trial demonstrate both his awareness and his notification of the trial court that it
had distributed an asset that Perla failed to disclose during trial. (2) Jorge nevertheless presented no
evidence of the Toyota's value. The trial court, thus informed of the previously unmentioned asset's
distribution, declined to alter the distribution of the community estate. While the unexplained debut
of an asset in the judgment is less than ideal, we have no evidence regarding its value or the value
of other property, and no real basis on which to assess its impact on the justness and rightness of the
division of the community estate.

 With regard to community liabilities, the court awarded the remaining debt on the
Chevy Silverado to Perla and ordered Jorge to reimburse Perla for half of their child's $8,000
medical bill. Otherwise, the parties were awarded debts they accrued following their separation.
Although there is no evidence of the amount owed on the Chevy (other than Perla's testimony that
payments are $982 per month), there is evidence of the value of the medical bill--Perla's testimony.
Jorge's choice not to cross-examine her or present his own evidence on the issue leaves her
testimony undisputed and controlling on the amount owed and paid. (3)

 The absence of evidence of values of community assets and debts distributed renders
an assessment of that distribution speculative and essentially meaningless. Jorge complains that
Perla received two vehicles (offset somewhat by the remaining loan balance on one) and he received
none, pointing to this fact as evidence of an unequal division of assets expressly awarded. The
record provides no way of knowing, however, if that automobile inequality is offset by the award of
other unspecified assets in their respective possession and/or the award of the remaining automobile-related and personal debt. We conclude that Jorge has not demonstrated that the record presented
in this appeal shows that the trial court abused its discretion when dividing the community estate. (4) 

Child support

 Jorge contends that the trial court erred by ordering him to pay child support at
$618 per month and retroactive child support of $10,506 because he was in jail and not actually
receiving income at the time of the award. The court ordered him to pay the accrued support at
$1,751 per month. Generally, we review the trial court's award of child support for abuse of
discretion. Worford v. Stamper, 801 S.W.2d 108, 109 (Tex. 1990). A trial court abuses its discretion
when it acts without reference to any guiding rules or principles, or when it fails to analyze or apply
the law correctly. Walker v. Packer, 827 S.W.2d 833, 840 (Tex. 1992); Downer v. Aquamarine
Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985). In child support decisions, the paramount
guiding principle of the trial court should always be the best interest of the child. Iliff v. Iliff,
339 S.W.3d 74, 81 (Tex. 2011) (citing Rodriguez v. Rodriguez, 860 S.W.2d 414, 417 n.3
(Tex. 1993)).

 The legislature has established guidelines for the award of child support,
and application of these guidelines is rebuttably presumed to be in the child's best interest. See
Tex. Fam. Code Ann. § 154.122 (West 2008). Under the guidelines, trial courts determine the
appropriate level of support based on net resources available, which include the following:

 

 (1) 100 percent of all wage and salary income and other compensation for personal
services (including commissions, overtime pay, tips, and bonuses);


 (2) interest, dividends, and royalty income;


 (3) self-employment income;


 (4) net rental income (defined as rent after deducting operating expenses and
mortgage payments, but not including noncash items such as depreciation); and


 (5) all other income actually being received, including severance pay, retirement
benefits, pensions, trust income, annuities, capital gains, social security benefits other
than supplemental security income, unemployment benefits, disability and workers'
compensation benefits, interest income from notes regardless of the source, gifts and
prizes, spousal maintenance, and alimony.


Tex. Fam. Code Ann. § 154.062(b) (West Supp. 2010). Courts must require parties to provide
this information to the court. Id. § 154.063 (West 2008). In the absence of evidence of wage and
salary income, courts must presume that the party has wages or salary equal to the federal minimum
wage for a 40-hour week. Id. § 154.068. Incarceration alone does not rebut the minimum-wage
presumption, and there is no legal presumption that an inmate has no assets. In re M.M., 980 S.W.2d
699, 700-01 (Tex. App.--San Antonio 1998, no pet.). Courts consider these resources, then deduct
certain expenses to determine the net resources available. See Tex. Fam. Code Ann. §§ 154.061-.062
(West 2008 & Supp. 2010). In determining whether application of the guidelines would be
unjust and inappropriate, the court must consider several issues, including "any financial resources
available for the support of the child." See id. § 154.123(b) (West 2008). The guidelines set a
percentage of monthly net resources that should be devoted to child support depending on the
number of children. Id. § 154.125 (West Supp. 2010). Under the guidelines, an obligor should
provide 25% of his net resources to support his two children. Id.

 The trial court necessarily based its child-support determination on Perla's testimony
because Jorge declined to provide any testimony or evidence. Perla testified that she believed
Jorge earned $3,000 per month. She also testified that she and Jorge had sold some real estate in
September 2009 and that each had received a check for $37,000. Although the trial court did not
expressly state the basis for its calculation of child support, we note that the award conforms to the
guidelines for an employed person who earns $3,000 monthly and has two children. See Tex. Fam.
Code Ann. §§ 154.061 (employed persons 2010 tax chart) (West Supp. 2010), & .125 (guidelines
for person with two children). Under the 2010 statutory chart, the net monthly income for an
employed person paid $3,000 monthly is $2,472.27, and 25% of that is $618.07. Such application
of the guidelines to the evidence is rebuttably presumed to be both reasonable and in the children's
best interest. See Tex. Fam. Code Ann. § 154.122.

 Jorge argues that the award is erroneous because there was no persuasive evidence
that he had any income. He contends that Perla's testimony about his former income was uncertain
at best and that there is no documentation in the record supporting her testimony about the alleged
amount of his former income or about the proceeds from the alleged sale of real estate. He states
that there is no showing that he has any income or any ability to earn income as a fence builder
or otherwise while in jail. He contends that, with no proof of current income being received, the
trial court should have used the minimum wage presumption to calculate his child support. (5)

 We conclude that the trial court did not abuse its discretion by making the
child support award based on the evidence before it. Perla's testimony that Jorge made $3,000
per month and had been paid $37,000 for a real estate sale two months previously was undisputed.
Jorge was in court and did not cross examine her or present any evidence regarding his past or
present income. Although Jorge undisputedly was in jail at the time of the trial, there is no evidence
about exactly how long he had been or would be in jail, nor is there any evidence that he had
exhausted the $37,000 or any other assets that could be considered as "financial resources available
for the support of the child" under family code section 154.123(b). The court set child support based
on the only evidence in the record about Jorge's income and his ability to pay that amount from his
present assets. We find no abuse of discretion in the trial court's determination that Jorge would
serve the children's best interest by providing them with $618 monthly in child support, and that
at the time of the hearing he had the financial resources to provide that support for his children.

 Similarly, the trial court did not abuse its discretion by awarding $10,506 in
retroactive child support from May 1, 2008. Courts must use the child-support guidelines in
determining whether retroactive support is warranted. Tex. Fam. Code Ann. § 154.131 (West 2008).
Courts must consider the obligor's resources during the relevant time frame. Id. § 154.131(a). The
court must further consider issues such as whether an award of retroactive support might impose an
undue financial hardship on the obligor. Id. § 154.131(b)(3). The court must also consider whether
the obligor has provided actual support. The evidence of Jorge's monthly income set out above is
also relevant to this issue. Perla also testified that Jorge had provided $300 total in child support
during the separation. Jorge did not testify, but attached to his motion for new trial carbon copies
of checks to Perla totaling $1,000. The checks do not state the purpose for which they were
paid, and the trial court was not required to find that these payments were for child support. (The
trial court may, however, have accounted for some of these payments by making the obligation begin
on May 1, 2008, rather than April 1, which is when Perla claims the separation began.) We also note
that, although Jorge asserts that he posted $570,000 in bonds, he does not provide evidence
to support this assertion. Based on this record, we conclude that the trial court did not abuse its
discretion by determining that it was in the children's best interest for Jorge to pay his children
support at $618 per month for 17 of the months of separation for a total of $10,506 in past
child support due.


Attorney's fees

 Jorge challenges the award of attorney's fees to Perla without a direct pleading for
attorney's fees in the initial petition, without testimony regarding hours spent on the clients or
documentary evidence supporting the bills, without segregation of the attorney's fees from costs and
expenses, and without evidence regarding whether "good cause" exists for payment of the fees. 

 When, as in this case, a statute states that a trial court "may" award attorney's fees,
such an award is discretionary and we review the trial court's choice to award fees under the abuse-of-discretion standard. Playoff Corp. v. Blackwell, 300 S.W.3d 451, 458-59 (Tex. App.--Fort Worth
2009, pet. denied). We then review whether sufficient evidence supports the amount of fees
awarded. Goodson v. Castellanos, 214 S.W.3d 741, 758-59 (Tex. App.--Austin 2007, pet. denied);
see also Garcia v. Gomez, 319 S.W.3d 638, 646 (Tex. 2010).

 Perla acknowledges that she did not plead for attorney's fees in the divorce petition,
but correctly notes that she requested them in her application for protective order. The family code
permits courts to assess reasonable attorney's fees when considering a request for a protective order
against a party found to have committed family violence. Tex. Fam. Code Ann. § 81.005(a)
(West 2008). The fees awarded as compensation for a private attorney "shall be paid to the private
attorney who may enforce the order for fees in the attorney's own name." Id. § 81.006(a). These
statutes do not require a showing of "good cause" to award the fees. Perla's attorney testified as
follows regarding attorney's fees: 


 I practice in Travis County and the surrounding counties. I charge $375 an hour. I
am board certified and have been since 2002. And my fees are reasonable and were
necessary in this case. 


 We had several hearings, we've had to file a protective order and a temporary
ex parte protective order. So Mrs. Monroy paid me $6,000 at the beginning and
that's depleted. And so I think I asked for $6,000 in the written final decree of
divorce. But, actually, it's going to be closer to 7,500. And we are asking that he pay
all of my fees.


The trial court awarded $7,500 in attorney's fees payable to and enforceable by Perla's attorney.

 Factors that a factfinder may consider when determining the reasonableness of
a fee include:


 (1) the time and labor required, the novelty and difficulty of the questions involved,
and the skill required to perform the legal service properly;

 

 (2) the likelihood . . . that the acceptance of the particular employment will preclude
other employment by the lawyer;

 

 (3) the fee customarily charged in the locality for similar legal services;

 

 (4) the amount involved and the results obtained;

 

 (5) the time limitations imposed by the client or by the circumstances;

 

 (6) the nature and length of the professional relationship with the client;

 

 (7) the experience, reputation, and ability of the lawyer or lawyers performing the
services; and

 

 (8) whether the fee is fixed or contingent on results obtained or uncertainty of
collection before the legal services have been rendered.

Arthur Andersen & Co. v. Perry Equip. Corp., 945 S.W.2d 812, 818 (Tex. 1997) (quoting
Tex. Disciplinary Rules Prof'l Conduct R. 1.04, reprinted in Tex. Gov't Code Ann., tit. 2, subtit. G,
app. A ( West Supp. 2010) (Tex. State Bar R. art. X, § 9)).

 Perla's attorney testified that she charges $375 per hour and requests $7,500 in fees
(without regard to court costs or other fees), which simple division shows to be a claim for 20 hours
of work. Perla's attorney's testimony reveals that the attorney is sufficiently skilled and experienced
to be board certified. Perla's attorney testified without contradiction that she believes her fees to
be reasonable and necessary. Jorge presented no evidence countering Perla's attorney's testimony
and did not cross-examine her regarding the work performed. Perla prevailed at each stage of the
protective order proceeding. Although the award of attorney's fees appears in the divorce decree,
it does not specify a basis for the award, and the fee award could be compensation solely for work
leading to the protective order. Jorge has not demonstrated otherwise, and thus has not shown that
the trial court erred by awarding the attorney's fees on this record.

 

CONCLUSION


 We conclude that, on the record presented, Jorge has not demonstrated that the
trial court erred. We affirm the judgment.


 

 Jeff Rose, Justice

Before Justices Puryear, Pemberton and Rose

Affirmed

Filed: August 31, 2011
1. Because the parties shared a last name at trial, we will use their first names for clarity.
2. We note that Jorge does not assert that he did not know that Perla owned a vehicle that was
community property, only that she did not disclose it to the court during trial.
3. Although the trial court ordered Jorge to reimburse Perla $4,000 without also expressly
assigning the $8,000 debt itself, Jorge does not complain of the court's failure to specifically assign
the debt owed to the hospital.
4. We reach this conclusion irrespective of the propriety of the finding of cruelty by Jorge
toward Perla, thereby rendering moot Jorge's complaint that, because Perla did not plead cruelty, the
trial court erred by finding it.
5. Although the record is silent as to the amount, we note that the federal minimum wage
was $7.25 per hour in November 2010. The statutory chart lists $1,112.79 as the net monthly
wage for a person earning the federal minimum wage. See Tex. Fam. Code Ann. § 154.061
(West Supp. 2010). Twenty-five percent of that total is $278.20.